UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NARIMAN SKAKOV, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | Civil Action No. 21-CV-11412-AK |
| BLACK BEAR MOVING AND STORAGE, and ANTHEM CLAIM MANAGEMENT; | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiff Nariman Skakov ("Mr. Skakov") moved from California to Massachusetts in 2020, enlisting the services of Black Bear Moving and Storage ("Black Bear"), a California-based moving company. Black Bear was insured by Anthem Claim Management ("Anthem"), an Arizona-based insurance company. The move did not go as planned, and Mr. Skakov ultimately made a claim upon Anthem for property that Black Bear had lost and damaged, and subsequently sued both parties under state and federal consumer protection statutes. Mr. Skakov obtained an entry of default after the defendants failed to respond to the complaint or otherwise defend this action and has now moved for default judgment. Because the Court finds that Mr. Skakov has pled sufficient facts to establish liability, but insufficient facts to establish his measure of damages, it will **DENY** the motion without prejudice pending more definite briefing.

I.      **Factual and Procedural Background**

Unless otherwise noted, the facts are recited as alleged in Mr. Skakov's complaint.  [See Dkt. 1 ("Compl.")].  In July 2020, Mr. Skakov contracted with Allegiance Moving and Storage ("Allegiance"), a Florida-based moving broker, to move from San Francisco to Cambridge, Massachusetts.  Allegiance brokered a contract between Mr. Skakov and Black Bear under which Black Bear would perform the move, and Mr. Skakov would directly pay Black Bear.  This contract provided that Black Bear would pick up Mr. Skakov's property from his San Francisco residence between 3:00 p.m. and 6:00 p.m. on July 27, 2020, and would deliver the property to Cambridge by August 13, 2020.

Black Bear did not arrive on time to perform the move, not reaching Mr. Skakov's San Francisco address until 11:30 p.m.  Black Bear also lacked the necessary materials for safe packing.  Black Bear completed packing Mr. Skakov's property at about 3:00 a.m. on July 28, 2020, and Mr. Skakov expressed concern that Black Bear's lack of safe packing materials could lead to property damage during the move.  The property arrived in Cambridge on August 14, 2020, one day later than the contract had provided for, in a different truck from the one that had been loaded in San Francisco on July 28.  Mr. Skakov observed that some items had been broken, scratched, and otherwise damaged.  Further, some items, including artwork, were missing.

Mr. Skakov reported the missing and damaged property to a Black Bear customer service agent.  The agent acknowledged that property was missing and damaged, and that Black Bear bore responsibility for locating the missing items.  Black Bear informed Mr. Skakov on or around August 31, 2020 that some of the missing artwork had been located, but provided no further information.  On or around September 11, 2020, the broker Allegiance informed Mr.

Skakov that his missing property had been inadvertently left in a warehouse along the route from San Francisco to Cambridge. Black Bear indicated on September 15, 2020 that it had located all of the missing property. However, Black Bear and Allegiance delayed returning the property as they did not have any scheduled trips between the warehouse and Cambridge.

Black Bear returned two of the three missing items to Mr. Skakov on October 7, 2020, but stated it could not locate the third missing item. Black Bear directed Mr. Skakov to file a claim against its insurer, Anthem, which Mr. Skakov did on October 29, 2020. On March 4, 2021, Mr. Skakov served a settlement demand letter on Anthem, Allegiance, and Black Bear. No party tendered Mr. Skakov a reasonable settlement offer in response to this letter.

In August 2021, Mr. Skakov filed the instant action against Anthem, Allegiance, and Black Bear, alleging violations of state and federal consumer protection laws. Mr. Skakov completed service upon Anthem and Allegiance in November 2021, [Dkts. 11–12], and after being granted an extension of time to complete service, upon Black Bear in February 2022, [Dkt. 22]. Of the three defendants, only Allegiance responded to the complaint, moving to dismiss it for failure to state a claim. [Dkt. 31]. That motion was mooted in June 2022 by a settlement between Mr. Skakov and Allegiance. [Dkts. 42–43]. In May 2022, the clerk of this Court entered notices of default against Anthem and Black Bear, as they had failed to timely answer the complaint following service. [Dkts. 32–33]. Mr. Skakov then timely moved for default judgment. [Dkt. 41].

## II. Legal Standard

The Federal Rules of Civil Procedure provide a two-step process for default judgment. See Fed. R. Civ. P. 55. First, the clerk must enter a notice of default "[w]hen a party against

whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, upon obtaining a notice of default, the plaintiff must apply to the court for default judgment where the amount of damages is not a "sum certain." See Fed. R. Civ. P. 55(b). The party that has defaulted "is deemed to have admitted all of the allegations in the complaint." CNE Direct, Inc. v. Blackberry Corp., 55 F. Supp. 3d 233, 234 (D. Mass. 2014); see SEC v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015) (noting that entry of default "constitutes an admission of all facts well-pleaded in the complaint" (citation omitted)). However, the court independently "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). While the court may set a hearing to determine damages "when the amount is in dispute or is not ascertainable from the pleadings," the court may order default judgment without a hearing where "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002).

**III.   Discussion**

Mr. Skakov has satisfied the first step of the default judgment process by obtaining an entry of default. The Court now must evaluate whether the allegations in his complaint comprise legally cognizable causes of action against Anthem and Black Bear. If the Court finds that he has made such a showing, it must assess his request for damages. Because Count 3 raises a

preemption issue that predominates over the remaining claims, the Court begins its analysis there.[1]

### A. Count 3: Violation of the Carmack Amendment by Black Bear

Count 3 brings a claim for damages against Black Bear under the Carmack Amendment, 49 U.S.C. § 14706, a federal statute governing a carrier's liability for loss or damage to interstate shipments of cargo. The statute makes a carrier liable for all "actual loss or injury to [] property" that is carried between states unless the carrier takes specific actions to limit its liability, and requires the carrier to "issue a receipt or bill of lading for property it receives for transportation." Id. To state a claim under the Carmack Amendment, "a plaintiff must show (1) delivery to the carrier in good condition; (2) arrival in damaged condition; and (3) the amount of damages caused by the loss." Camar Corp. v. Preston Trucking Co., Inc., 221 F.3d 271, 274 (1st Cir. 2000).

Here, Mr. Skakov has pled allegations sufficient to support a Carmack Amendment claim. The complaint states that Mr. Skakov delivered his property to Black Bear in "good and satisfactory condition, free from damage and defect." [Compl. ¶ 41]. Black Bear transported the property from California to Massachusetts, and some property arrived "broken, scratched, or otherwise evidencing clear damage," [id. ¶ 15], while one item of property was, at Black Bear's own admission, permanently lost, [id. ¶ 25]. Further, Black Bear did not comply with the procedural requirements of the Carmack Amendment, as it did not "provide a Bill of Lading upon receipt." [Id. ¶¶ 46–47]. Thus, the complaint states a claim under the Carmack

---

[1] Count 1, which brought a claim only against Allegiance, has been settled. [Dkt. 42].

Amendment sufficient to support entry of default judgment. The Court addresses the damages element below.

### B. Counts 2 and 4: Violation of Massachusetts Statutes by Black Bear

Count 2 alleges that Black Bear violated M.G.L. Chapter 93A, the Commonwealth's consumer protection statute. Chapter 93A provides relief to "any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice." M.G.L. ch. 93A, § 11. Likewise, Count 4 alleges that Black Bear violated M.G.L. Chapter 107, Section 7-309(a), which imposes a statutory negligence standard on carriers.

The Court need not evaluate the facts pled in support of Counts 2 and 4 because the Carmack Amendment, which forms the basis of Count 3, preempts state-law claims brought against a carrier related to loss or damage to interstate shipments of cargo. Rini v. United Van Lines, Inc., 104 F.3d 502, 506 (1st Cir. 1997). The First Circuit specifically held in Rini that the Carmack Amendment preempts "*negligence*, misrepresentation, and *chapter 93A* claims" related to loss or damage of property by an interstate carrier, id. (emphasis added), directly foreclosing any possibility of relief under the Massachusetts statutes that form the basis of Counts 2 and 4.

The Rini court did not, however, expressly resolve the question of whether Carmack Amendment preemption was "ordinary preemption," and thus a waivable defense that must be affirmatively raised by a defendant, or "complete preemption"—and thus, jurisdictional, and not subject to waiver. Complete preemption "applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim." Clean Harbors Recycling Servs.

Ctr. v. Harold Marcus Ltd., No. 12-10594-DPW, 2013 WL 1329532 at *6 (D. Mass. Mar. 29. 2013) (citation omitted); see SPGGC, LLC v. Ayotte, 488 F.3d 525, 534 (1st Cir. 2007) (distinguishing complete preemption, which "determines whether a federal court has jurisdiction over a claim," from ordinary preemption, which determines "whether a state enforcement action would be precluded on the merits"). State and federal courts are barred from considering a party's state-law cause of action in an area where Congress intended the federal cause of action to be exclusive. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 9–10 (2003).

Although the Rini court was not required to reach this question, it strongly indicated in dicta that Congress intended the Carmack Amendment to be an exclusive cause of action. 104 F.3d at 507 (citing "the federal government's exclusive jurisdiction over the shipper-carrier relationship," and the statute's purpose to "to provide uniformity to claims for the loss or damage to goods"). In accordance with this reasoning, the prevailing position in this district is that the Carmack Amendment completely preempts state law, and is a jurisdictional barrier to plaintiffs asserting state-law claims against carriers for damages incurred in interstate transportation. See Clean Harbors, 2013 WL 1329532 at *6. At least two federal circuit courts that have directly considered this question have reached the same conclusion about the Carmack Amendment's preemptive effect. Hall v. North Am. Van Lines, Inc., 476 F.3d 683, 688 (9th Cir. 2007); Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003).

Accordingly, the Court need not consider the fact that Black Bear, through its default, waived its ability to assert preemption as an affirmative defense to the Massachusetts-law claims. Congress' passage of the Carmack Amendment as the sole remedy governing carrier liability for loss or damage to cargo in interstate shipping prevents Mr. Skakov from seeking further relief under state law, and default judgment may not enter on his state law claims against Black Bear.

### C. Count 5: Violation of Chapter 93A by Anthem

Count 5 brings a Chapter 93A claim against Anthem only, alleging that the insurer failed to timely tender an offer of settlement upon its receipt of a Chapter 93A demand letter, despite the liability of its insured (Black Bear) having become reasonably clear. Because Anthem is an insurer, not a carrier, it is not a party subject to Carmack Amendment liability, and thus Count 5 is not subject to the preemption analysis that prevents the Court from granting relief on Counts 2 and 4.

The standard for insurer liability under Chapter 93A in Massachusetts is well-established. Among its other statutory and common-law duties, an insurer has a responsibility to "effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Hopkins v. Liberty Mut. Ins. Co., 750 N.E.2d 943, 948 (Mass. 2001) (quoting M.G.L. ch. 176D, § 3(9)(f)). A violation of this requirement subjects the insurer to penalties under Chapter 93A. Id.; Calandro v. Sedgwick Claims Management Servs., Inc., 919 F.3d 26, 34 (1st Cir. 2019).

Here, the complaint alleges that Anthem was the insurer for Black Bear at the time that Black Bear lost Mr. Skakov's property. [Compl. ¶ 25]. Mr. Skakov made a claim for the lost property on or around October 29, 2020. [Id. ¶ 26]. About four months later, on March 4, 2021, Mr. Skakov served a demand letter on Anthem, but did not receive any reasonable offers of settlement in response. [Id. ¶ 28].

Because Anthem's insured directly admitted liability for loss of property to Mr. Skakov on October 7, 2020, [id. ¶ 25], liability should have been clear to Anthem at or shortly after the time it opened its file on this claim. The complaint's allegations that Anthem did not tender an offer of settlement at the time the claim was filed in October 2020, at the time of the demand letter in March 2021, or by the time this lawsuit was filed in August 2021 collectively state a

clear and obvious case for liability under Chapter 93A, and default judgment may thus enter against Anthem on Count 5.

### D. Damages

Having found sufficient allegations to against Black Bear on Count 3 and against Anthem on Count 5, the Court now turns to the question of the appropriate measures of damages.

#### 1. Count 3: Carmack Amendment

Under the Carmack Amendment, "actual loss … is the proper measure of damages." Camar Corp. v. Preston Trucking Co., Inc., 221 F.3d 271, 276 (1st Cir. 2000). The statute ordinarily measures damages by "the reduction in market value at destination or by replacement or repair costs occasioned by the harm," and "incorporates common law principles of damages." Id. at 277. Punitive damages and "damages unrelated to the property at issue" are not available. Fredette v. Allied Van Lines, Inc., 66 F.3d 369, 372 (1st Cir. 1995). The Court cannot award damages beyond the sales value of the damaged or lost goods if the "record is too speculative to form the basis of a [greater] damages award." See Camar, 221 F.3d at 277.

Here, counsel for Mr. Skakov has filed an affidavit requesting that judgment be entered in the amount of $27,728.02 against Black Bear. [Dkt. 41 at 3–4]. Of this amount, $16,618 is attributable to lost and damaged property, [id.], the central measure of damages under the statute. However, the affidavit provides no indication of how this figure was ascertained—far from any itemization of damages by item, neither the complaint nor the affidavit discloses the nature of the item that Black Bear lost during transit, nor the nature or extent of the damage done to the property which was delivered. Likewise, the remainder of the proposed damages award

(excluding interest) is attributed to nonperformance of the delivery and contract terms, "additional cash payments," lost time and wages, and general "costs," with no further description.  [Id.]  This barebones categorization of losses is far too speculative a basis to support an award of damages greater than the change in market value of Mr. Skakov's property.  The Court does not preclude the possibility of an award of actual damages on any or all of these measures, subject to Mr. Skakov's development of a record establishing the nature and amount of each of these costs, and how they were directly attributable to the Carmack Amendment violation.

### 2. Count 5: Chapter 93A

The same analysis applies to Mr. Skakov's identical claim for damages against Anthem on Count 5.  Chapter 93A makes a defendant liable for "all losses which were the foreseeable consequences of the defendant's unfair or deceptive act or practice," but a plaintiff cannot recover for damages that "are remote, speculative, hypothetical, and not within the realm of reasonable certainty."  H1 Lincoln, Inc. v. South Washington Street, LLC, 179 N.E.3d 545, 562 (Mass. 2022).  Because the affidavit provides no grounds upon which the Court can conclude with "reasonable certainty" that its claimed damages are the true measure of Mr. Skakov's losses, it cannot, on this record, enter a damages award on Count 5.

### 3. Prejudgment Interest

Mr. Skakov further seeks prejudgment interest on his award.  This Court has previously held that prejudgment interest is available, at the federal rate, for violations of the Carmack Amendment, upon finding that federal-rate awards support the statute's purpose of providing

predictable, uniform recovery for consumers where interstate carriers lose and damage cargo. Richwell Grp., Inc. v. Seneca Logistics Grp., Inc., 433 F. Supp. 3d 58, 64 (D. Mass. 2019). Likewise, prejudgment interest is available for violations of Chapter 93A at the Massachusetts statutory rate. McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 102 (D. Mass. 2012). Accordingly, upon calculation of its award to Mr. Skakov, the Court will award prejudgment interest against Black Bear at the federal rate and against Anthem at the Massachusetts rate in the amount that has accrued as of the date of the award.

### IV.   Conclusion

For the foregoing reasons, Mr. Skakov's motion for default judgment is **DENIED WITHOUT PREJUDICE**. Mr. Skakov is hereby **ORDERED** to, within 30 days, submit a renewed motion accompanied by a definite affidavit supporting his claimed damages award, or move for a hearing on damages.

**SO ORDERED.**

Dated: December 9, 2022                         /s/ Angel Kelley
                                                Hon. Angel Kelley
                                                United States District Judge